written by previous counsel. And I'd like to address that. In the fall of 2008, Petitioner's Counsel had made several requests that vocational rehabilitation would be initiated. Not until December 2009 does Petitioner's Counsel get this letter. In this letter, it does not say that vocational rehabilitation will be started. It says, I will discuss it. I will discuss it with the employer. It doesn't say we're going to start it. We're not going to initiate anything. We'll talk about it. So your position is very simple. In summary, you're saying the employer never offered folk rehab services. Correct. Never actually offered them. Correct. Okay. The employer also mentions ESL and Martin was taking ESL classes at the time of trial. That's true. Martin paid for those classes. Martin signed up for those classes himself. The employer never offered those. Martin was doing his own diligence in trying to better himself in terms of his job prospects or whatever he could to make a better life. In terms of the arguments themselves, of course, as the Respondent mentioned, there are three ways to establish permanent total. We do believe that he established it through two ways. First, doing the diligent but unsuccessful job search through all the employers that he contacted. And it was self-directed. There was no vocational counseling of any kind. And the second way is through the multifaceted category of age, training, experience, education, in which the combination of factors really combined to make him unemployable. Of course, with that, that could have gone away if there had been vocational training, though, possibly. Potentially. Potentially. But none of the vocational experts said it was a guarantee. It said, Pajella, for example, said, well, he's unemployable unless he gets this training. And if he gets this training, well, maybe. Just maybe then. I mean, that's his only chance. But there's certainly no guarantee that he will find a job even with that. I mean, they were saying he couldn't even be a greeter at Walmart because he doesn't speak English. He can't be a security guard because he's on narcotic medication. He doesn't have a GED. He can't do a variety of tasks that, especially the Department of Transportation with the lower extremity injury, not to mention the narcotic medications. And he is expelled from all sorts of job prospects. The field is so narrow that unless he has this focused rehabilitation effort, there would be no chance. So did the employees' vocational experts identify any jobs that would fit within the claimants' restrictions or the availability of those jobs? Did they come forward with any information like that? No. They used, I believe the word was explore. We could explore opportunities in manufacturing, warehousing, nothing like that. But never identified anything specific that would be available. No. Nothing. You agree, don't you, counsel, that the penalties were miscalculated? Yes. Based on the medical? Just based on the medical. I believe it was correct with respect to the TTD. But of course that affected the whole amount. But otherwise, I do believe that the penalties and position was fair and appropriate and should stand. But I have nothing further. Thank you. Thank you, counsel. Counsel, you may reply. Yes, just real quickly. I'll try not to repeat myself too much. The vocational, the employer's vocational consultant did identify certain categories of jobs, did not identify specific jobs. I agree with that. But they identified jobs in manufacturing, warehouse work, transportation environments, assembly, machine operator, perhaps light metal worker of some sort. And that's the purpose of vocational rehabilitation is to identify specific jobs. First, in this case, would involve some ESL courses, some computer training, some help him prepare a resume, help teach him certain job-seeking skills. And then they could go out and see what type of specific jobs are available once he has prepared for that process a little bit more. That's the specific nature of the job search, I think, of the vocational rehabilitation that the employer's vocational consultant outlined. And which, by the way, petitioner's vocational consultant said he agreed that he could not find a job unless he went through an aggressive vocational rehabilitation program. And I'm not saying that it would be a guarantee that the petitioner would get a job, but I think it's his best chance rather than relegating him to a permanent total disability situation. Thank you. Thank you, counsel. Matter will be taken under advisement.